IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY LEEB,                  )
                               )
           Plaintiff,          )
                               )
    v.                         )   No. 12 C 913
                               )
NATIONWIDE CREDIT              )
CORPORATION,                   )
                               )
           Defendant.          )

MEMORANDUM OPINION AND ORDER

In the only claim remaining in this case, Gregory Leeb ("Leeb") alleges that Nationwide Credit Corporation ("Nationwide") attempted to collect a disputed debt in violation of the Fair Debt Collection Practices Act. See 15 U.S.C. § 1692g(b).

Leeb has moved for partial summary judgment on liability. Nationwide has filed a cross motion for summary judgment on liability and its statutory defense that unlawful debt collection activities it engaged in were bona fide errors. I grant Leeb's motion and deny Nationwide's cross motion for the reasons stated below.

I.

On May 21, 2011, Leeb incurred a debt to Infinity Healthcare Physicians ("Infinity") for emergency room care

he received at St. Francis Hospital in Evanston, Illinois. Pl.'s Statement of Material Facts ("PSOF") at ¶ 3. Leeb thought Cigna, his medical insurer, would pay for his treatment. *Id.* at ¶ 4. On December 28, 2011, Leeb received a phone call from Nationwide regarding the medical debt. *Id.* at ¶ 5. Leeb told Nationwide's representative that he was disputing the debt because Cigna should have paid any balance due. *Id.* Leeb also said he would submit documents showing that he did not owe the debt. Def.'s Statement of Material Facts ("DSOF") at ¶ 21. After this call, Nationwide entered a code on Leeb's account that prevented any further calls being placed to him. *Id.* at ¶¶ 23, 25.

Leeb sent a letter to Nationwide on December 28, 2011, confirming his conversation with a Nationwide employee earlier that day. PSOF at ¶ 7. After referencing his rights under the Fair Debt Collection Practices Act and disputing the debt in writing, Leeb's explained the substance of his communications with Cigna. *Id.* Cigna had received a claim for Leeb's medical treatment, but requested additional information from Infinity. *Id.* When Infinity did not furnish the requested information, Cigna closed the claim. *Id.* Leeb enclosed a copy of Cigna's explanation of benefits statement and gave Nationwide permission to speak with Cigna regarding the claim. *Id.* Nationwide received Leeb's letter

2

on January 3, 2012 and marked his account as disputed. *Id*. at ¶ 8; DSOF at ¶ 26.

After mailing his December 28 letter, Leeb received a "dunning" or collection letter from Nationwide dated December 26, 2011. PSOF at ¶ 9. Nationwide's letter explained that the medical debt for $327.00 had been sold to Pendrick Capital Partners, LLC ("Pendrick") and turned over to Nationwide for collection. Pl.'s Ex. 10. If Leeb did not pay the debt within forty five days, Nationwide wrote that it would report his account to three credit reporting agencies. *Id*. The penultimate paragraph of Nationwide's letter stated: "If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt of any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification." *Id*.

On December 30, 2011, Leeb faxed and mailed another letter to Nationwide in which he once again disputed the medical debt. PSOF at ¶ 10. After noting the "threatening tone" of Nationwide's December 26 dunning letter, Leeb wrote,

> I am now DEMANDING that your office send me a letter stating that the above noted account number is now in dispute, and that NO negative entries

> will be placed on ANY of my credit reports while this issue is indeed in dispute, as per my letter to your office earlier this week. I expect to receive this letter no later than Friday, January 6, 2012.

Pl.'s Ex. 6 (emphasis in original). Nationwide stamped Leeb's letter as "received" on January 5, 2012. PSOF at ¶ 10.

On December 31, 2011, Leeb copied Nationwide on his letter to Infinity in which he enclosed information showing that he did not owe the medical debt. DSOF at ¶ 28. Infinity called Leeb on January 2 or 3, 2012 and explained that they were taking his debt out of collection. *Id*. at ¶ 34. Infinity told Leeb it would submit additional information to Cigna to facilitate payment of the claim for his emergency room care. *Id*.

On January 4, 2012, Leeb sent a letter instructing Nationwide to cease all communications regarding his account upon receipt of the letter. Pl.'s Ex. 7. Leeb explained that Infinity had advised him that it was going to send Pendrick a notice to stop collection activities. *Id*. Leeb also enclosed a medical claim report from Cigna reflecting payments to Infinity at the contracted rate, leaving a zero balance. *Id*. Nationwide received this letter via fax on January 4, 2012 at 12:45 pm. *Id*. at ¶ 14.

Despite receiving multiple dispute letters from Leeb, Nationwide sent him a form letter on January 5, 2012 reflecting an account balance of $327.00 and instructing him to "detach the upper portion and return with payment." Pl.'s Ex. 9. The body of Nationwide's letter acknowledged receipt of Leeb's dispute letter, but requested additional information and supporting documentation. *Id*. Directly below the signature line, Nationwide wrote, "This communication is from a debt collector attempting to collect a debt and any information obtained will be used for that purpose." *Id*. Nationwide admits that one its employees "requested" that the January 5 letter be sent to Leeb, but maintains that she did not intend to violate the law. Def.'s Ex. E at ¶¶ 9-10.

## II.

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*., requires debt collectors to provide consumers with a written notice no later than five days after initiating communication about a debt. *Id*. at § 1692g(a). This notice must include:

> a statement that if the consumer notifies the debt collector in writing within [a] thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such

5

> verification or judgment will be mailed to the consumer by the debt collector.

*Id*. at § 1692g(a)(4).

When a consumer disputes a debt in writing, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment...and a copy of such verification or judgment...is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

Leeb argues that summary judgment is appropriate because Nationwide's letter dated January 5, 2012 was an unlawful attempt to collect a disputed debt. Nationwide has filed a cross motion for summary judgment on two grounds: (1) no reasonable jury could find that Leeb, "a serial litigant well versed in his consumer rights," understood the January 5 letter to be requesting payment of a debt he actually owed and (2) Nationwide's policies show that the letter was a bona fide error. Dkt. No. 95 at 2.

"With cross summary judgment motions, [a court must] construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *In re United Airlines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (internal quotation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a).

A.

Nationwide admits that it received two letters from Leeb disputing his purported medical debt within the thirty day timeframe specified by statute. *See* 15 U.S.C. § 1692g(a). "Section 1692g(b)...gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities." *Jang v. A.M. Miller and Assoc.*, 122 F.3d 480, 483 (7th Cir. 1997). Here, Nationwide chose a third course that the statute prohibits. Although Leeb requested written confirmation that Nationwide had received his dispute, Nationwide erred in sending a letter that demanded payment and plainly identified itself as a communication "from a debt collector attempting to collect a debt." Pl.'s Ex. 9. This letter is a facial violation of Section 1692g(b).

Nationwide's focus on Leeb's state of mind when he received the January 5 letter is misplaced. Leeb has not asserted the type of FDCPA claim that implicates a consumer's state of mind. *See e.g.*, *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (applying "unsophisticated consumer" test to claim under 15 U.S.C. § 1692e that debt

7

collector made "false, deceptive, or misleading" representations); *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635-37 (7th Cir. 2012) (applying "unsophisticated consumer" standard to claim under 15 U.S.C. § 1692g(b) that dunning letter contained language that "overshadowed" or was "inconsistent with" statutorily-required notice of consumer's right to dispute the debt). Nor does Leeb's claim turn on whether Nationwide's letter influenced him in any particular way. *Cf. Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 627 (7th Cir. 2009) ("If the average unsophisticated consumer would not be influenced by a statement rightly or wrongly claimed to be literally false, the case should end right there.").

A consumer's state of mind is relevant to deciding whether he or she was confused, deceived or mislead, but is *not* relevant to whether a particular communication attempts to collect a debt. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009) (holding that whether a communication was sent "in connection with" an attempt to collect a debt under 15 U.S.C. § 1692e "is a question of objective fact" and "need not be established by extrinsic evidence of what the unsophisticated consumer might think"). Here, any reasonable fact finder would conclude that Nationwide attempted to collect a disputed debt in its

January 5 letter to Leeb. "An express demand for payment, regardless of who initiated the contact, is a classic attempt to collect a debt." *Luxenburg v. Equifax Credit Information Servs.*, No. 03 C 5440, 2005 WL 78947, at *3 (N.D. Ill. Jan. 12, 2005).[1]

I conclude that Nationwide violated Section 1692(g) by sending a letter to Leeb that expressly demanded payment of a disputed debt before providing him with a statutorily-required verification.

B.

Nationwide attempts to avoid liability by arguing that the January 5 letter was a "bona fide error" under the relevant statutory defense:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

---

[1] Nationwide attempts to analogize this case to *Baily v. Security National Serving Corp.*, No. 06-CV-15777-DT, 2007 WL 1648885 (E.D. Mich.), where the court held that two challenged letters "were, on their face, in the nature of a customer service response, rather than a debt collection demand." *Id.* at *4. *Bailey* is readily distinguishable because neither letter in that case made an express demand for payment. *Id.*

The Supreme Court has held that the bona fide error defense does not excuse mistakes of law--i.e., "violations resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010). In other words, "the bona fide error defense under Section 1692k(c) only applies to procedural or clerical errors." *Bassett v. I.C. Sys., Inc.*, 715 F.Supp.2d 803, 813 (N.D. Ill. 2010) (citing *Jerman*, 559 U.S. at 589-90).[2]

Nationwide has submitted an affidavit signed by the Collection Support Representative ("CSR") who sent the January 5 letter to Leeb. The CSR declares: "In an effort to follow [Leeb's] demand that an acknowledgment of the dispute be made by January 6, 2012, I requested that Letter No. 89 be sent to [him]." Dkt. No. 96-5 at ¶ 9. "To the extent any of the foregoing is held to be in violation of the Fair Debt Collection Practices Act ("FDCPA"), I did not

---

[2] Nationwide's reliance on *Durthaler v. Accounts Receivable Management, Inc.*, 854 F.Supp.2d 485 (S.D. Ohio 2012), is misplaced because the court applied the wrong legal standard in that case: "The bona fide error defense applies to mistakes of law as well as to clerical errors." *Id*. at 493 (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476 (6th Cir. 2008), *rev'd,* 559 U.S. 573 (2010))

intend to violate the FDCPA in sending Letter No. 89." *Id.* at ¶ 10.

Although submitted in support of Nationwide's bona fide error defense, the CSR's affidavit shows why the defense does not apply in this case. The CSR admits that she consciously decided to send Leeb a form letter that contained an express demand for payment. Whether she intended to violate the law is beside the point because the bona fide error defense does not confine liability to willful violations of the statute. *Jerman*, 559 U.S. at 584. The adequacy of Nationwide's policies is also irrelevant because the CSR's affidavit establishes that Leeb did not receive the January 5 letter because of a clerical or procedural error.

Nationwide is correct that it had no legal obligation under Section 1692g(b) to provide Leeb with written confirmation of his dispute. Its only obligation was to cease collection efforts until it provided Leeb with the verification he had requested. Despite these limited obligations, Nationwide intentionally sent Leeb a letter demanding payment of his purported debt. Therefore, Nationwide cannot escape liability under the bona fide error defense, which is reserved for clerical errors.

III.

Leeb's motion for summary judgment is GRANTED and Nationwide's cross motion for summary judgment is DENIED for the reasons stated above.

**ENTER ORDER:**

_____
Elaine E. Bucklo
United States District Judge

Dated: November 21, 2013